**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Lakeldra Elmore, *Individually and as Parent, Next Friend, Natural and General Guardian of Xavier Moore*, <br><br> PLAINTIFF, <br><br> vs. <br><br> Dorchester County, *et. al.*, <br><br> DEFENDANTS. | ) C/A No. 2:24-CV-04456-DCN-MGB <br> ) <br> ) <br> ) <br> ) <br> ) **REPORT AND RECOMMENDATION** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Plaintiff, through counsel, originally filed this action in the Dorchester County Court of Common Pleas. (Dkt. No. 1-1.) The action was removed to federal court on August 14, 2024. (Dkt. No. 1.) Before the court is a Motion for Summary Judgment filed by Defendants Edgar Enxuto and South Carolina Department of Public Safety ("SCDPS Defendants") (Dkt. No. 48) and a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants Dorchester County, Dorchester County Sheriff's Office, L.C. Knight, Christhian Bravo, Lieutenant Matthew Carter, and Frank Thompson ("Dorchester Defendants") (Dkt. No. 49). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge. For the reasons stated herein, the undersigned recommends the motions be granted.

1

**A.    General Background**

This action arises from the alleged unlawful detainment of 21-year-old Xavier Elmore ("Xavier"), who has "diminished mental capacity, and at times, [is] non-verbal." (Dkt. No. 1-1 at 5.) On or about June 13, 2022, while at their home in Summerville, South Carolina, Xavier's mother, Plaintiff Lakeldra Elmore ("Plaintiff" or "Mother" or "Lakeldra"), "desperately called 911 because Xavier was acting abnormally and exhibiting a disturbing mental disorder." (*Id.*) Although a law enforcement officer came to Mother's home, Mother was informed "that nothing could be done about Xavier" and she "would have to take care of her son himself even in his apparent disturbing mental state." (*Id.*) After Xavier ran away from Mother when she "attempted to take [him] to a hospital," Mother again called law enforcement for help. (*Id.*) "While running away and unknown to Mother, Xavier physically ran into two vehicles; the drivers of the vehicles were concerned for Xavier's well-being and called Law Enforcement." (*Id.* at 5–6.)

While Law Enforcement told Mother that Xavier had been found and he was at a hospital, it was "several terrifying hours" before Mother was told Xavier had been taken to Trident Hospital in Charleston, South Carolina.[1] (*Id.*) When Mother arrived at Trident, she "found her son's clothing had been cut from his body and he had broken teeth and lacerations on his face and body." (*Id.*) "In [Xavier's] distressed mental state, he was moved to the Behavioral Center at Medical University and stayed there for several days for evaluation." (*Id.*) Xavier is "currently on mental health medication." (*Id.* at 7.)

The Complaint alleges that "[t]he patrol car and body camera videos show at least four Law Enforcement Officers and South Carolina State Trooper confronting Xavier. . . . Mother is

---

[1] The Complaint alleges "Trident Medical Center is also known as Trident Hospital." (Dkt. No. 1-1 at 6.)

informed and believes Matthew Carter, Frank Thompson, and Cristhian Bravo confronted Xavier when he ran away from her home." (*Id*. at 6.) The Complaint alleges the video depicts Xavier's "lack of understanding" as the "Law Enforcement Officers run after Xavier while shouting he will be tased." (*Id*.) According to the Complaint, the "Law Enforcement Officers show no concern for Xavier's lack of verbal ability and his bloodied face. They ran after him, tased him, tackled him to the ground, and one Deputy placed his huge knee in Xavier's back as he lay helpless on the pavement." (*Id*.)

Following this incident, Xavier was charged with Assault and Battery, 3rd Degree, Resisting Lawful Arrest, Pedestrians on Highways, and two counts of Malicious Injury to Animals, Personal Property. "The Assault and Battery, 3rd Degree, was dismissed by a Magistrate. The remaining charges were dismissed by the First Circuit Assistant Solicitors." (*Id*. at 7.)

Based on these events, Plaintiff Lakeldra Elmore filed this action in state court on behalf of her son, Xavier, on June 10, 2024. The case was removed to federal court on August 14, 2024. The Complaint alleges the following causes of action against all of the named Defendants: (1) Negligence and Gross Negligence under the South Carolina Tort Claims Act ("SCTCA") for Failure to Properly Train Law Enforcement and Failure to Properly Investigate, Negligent Hiring and Retention; (2) 42 U.S.C. § 1983 claims under the Fourth and Fourteenth Amendments for Excessive Force and Due Process Violations; (3) 42 U.S.C. § 1983 claim under the Fourteenth Amendment for Ethnic Discrimination; (4) 42 U.S.C. § 12132 claim under Title II, American Disabilities Act ("ADA"); and (5) Outrage/Intentional Infliction of Emotional Distress. (*Id.* at 7–15.)

On September 18, 2025, the SCDPS Defendants filed a Motion for Summary Judgment. (Dkt. No. 48.) The next day, the Dorchester Defendants filed a Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment. (Dkt. No. 49.) On October 21, 2025, Plaintiff filed a response in opposition to the motions, and she filed an amended response in opposition the next day. (Dkt. Nos. 58; 54.) Defendants then filed separate reply briefs. (Dkt. Nos. 56; 57.) The motions are ready for review.

**B.      Evidentiary Background**

As discussed below, standing is a threshold issue in this action. Here, the undersigned details the evidence most relevant to that issue.

**1.      Plaintiff's Deposition Testimony**

During her April 25, 2025 deposition, Plaintiff stated that prior to the incident at issue, she called the Dorchester County Sheriff's Office twice because she felt "like [Xavier] was having a mental breakdown." (Dkt. No. 54-5 at 19.) According to Plaintiff, Xavier was "writing on, tearing up pictures," "writing on soap," and "saying he was famous." (*Id*. at 19–20.) In response to one of those calls, "law enforcement" came to Plaintiff's house two days before Xavier's arrest and said they could not do anything unless Xavier "volunteer[ed] to go." (*Id.* at 21.) Plaintiff then took Xavier to the Summerville Medical Center "the night before" the underlying incident "and explained to them that [Xavier] needed help." (*Id*. at 22.) Plaintiff was told that Xavier "had to voluntarily walk in himself if he wanted help." (*Id.* (cleaned up).) Xavier "didn't want to go," so they "just went back home." (*Id*. at 23.)

The next morning, Xavier "was walking around . . . talking to himself," and Plaintiff saw Xavier run "out the door." (*Id.* at 24.) Plaintiff then "called the cops," who told her "they'd send an officer out." (*Id*. at 24, 26.) Someone "from the Sheriff's office" then called Plaintiff, asking her to "described what [Xaiver] had on" and telling her "we got him." (*Id*. at 28.) According to Plaintiff, "he was concerned about "Xavier's head" because Xavier "hit his head on the windshield

of a car." (*Id*.) When Plaintiff then asked, "which hospital are you taking him to," she was told, "I'll call you back and let you know." (*Id*.) Plaintiff stated that she "never got a phone call back." (*Id*.)

Plaintiff stated that she did not know where Xavier was "for like three days." (*Id*. at 31.) Plaintiff "finally went to the Sheriff's office on Deming Way and that's when they" told her Xavier was at Trident Hospital. (*Id*.) When Xaiver was released from the hospital, Xavier was admitted to Palmetto Behavioral Health at Plaintiff's insistence. (*Id*. at 37–38.) According to Plaintiff, Xavier stayed at Palmetto Behavioral Health for more than two weeks, and he now sees a provider at Dorchester Mental Health every three months. (*Id.* at 38, 40.) Plaintiff stated that Xavier was never diagnosed with a mental health disorder until after his arrest. (*Id*. at 39.) According to Plaintiff, Xavier was diagnosed with "severe psychosis" while at Dorchester Mental Health. (*Id*. at 39.) Plaintiff described Xavier's "condition" as: "his mind races with everything[;] he talks out loud to himself 24/7"; "he sleeps a lot"; and he "seems like he [is] depressed." (*Id.* at 42 (cleaned up).) Plaintiff stated that she first observed Xavier exhibiting this behavior "a week before" the underlying incident, and before that "he was kind of normal." (*Id.* at 42–43.) Xavier was never taken to jail, and his criminal charges were dropped. (*Id.* at 37.)

Specific to the underlying incident, Plaintiff admitted that she had no reason "to believe that any of the arresting officers or any of the named defendants in this case made any [] racist comments" to Xavier. (*Id*. at 48.) Plaintiff stated that Xavier was "tased until his kidney was punctured." (*Id*. at 57.) As for lasting injuries, Plaintiff stated that Xavier had scarring on his knees and arms that had healed, a "couple marks on his face," and a chipped tooth. (*Id*. at 43, 49.)

## 2. Xavier's Mental Health Records

The SCDPS Defendants have submitted a portion of Plaintiff's records from Charleston Dorchester Mental Health Center; specifically, a "follow up psychiatric medical assessment" via "telehealth" dated May 24, 2023. (Dkt. No. 56-1.) Under "history of present illness," the record documents that Xavier "reports" both "doing ok overall" and that "his mood is good overall," and Xavier "denies depression, anxiety, mania, psychosis." (*Id*. at 1.) The record further documents here, *inter alia*,

> Mom reports pt is still talking loudly like he is arguing with someone. This generally only occurs at home. She feels pt is able to control himself when out in public . . . She was asking if there was medication to help him. However it doesn't sound like actual psychosis but more re-experiencing past negative experiences. Also pt is able to control it.

(*Id*.)

Under "symptom elements," the record documents that Xavier denies symptoms of depression, mania, psychosis, and anxiety, and that Xavier has intrusive thoughts. (*Id*.) Under "mental status exam," the record documents that Xavier appeared "disheveled" and was "cooperative, calm" with "recent/remote memory intact," "attention/concentration intact, fund of knowledge below average," "judgment fair," "insight fair" and "impulse control intact during interview." (*Id.* at 2.)

The record documents Xavier's diagnosis as "schizoaffective disorder, bipolar type (chronic illness, stable)"; "social anxiety order (chronic illness, stable)"; "cannabis use"; "likely intellectual disability"; and "early 2022-depressive state vs prodromal." (*Id.*) The record documents Xavier was to "continue with supportive interventions to help with getting job and activities." (*Id*. at 3.)

## STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

In their motions, both the SCDPS and Dorchester Defendants argue, *inter alia*, that Plaintiff does not have standing to bring this action. (Dkt. Nos. 48; 49.) In response, Plaintiff generally argues that Defendants' motions "should be denied in their entirety." (Dkt. No. 54 at 8.) However, she does not reference Defendants' lack of standing argument, and she does not otherwise offer any argument in support of finding standing exists.

To have individual standing, Plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). As noted above, Plaintiff offers no arguments to dispute Defendants' assertion that she suffered no cognizable individual injury under § 1983. (Dkt. No.. 48 at 8.) Likewise, Plaintiff offers no arguments to dispute Defendants' assertion that she "was not personally involved in the alleged underlying incident and suffered no recoverable damages for the asserted State Law Claims." (Dkt. No. 49 at 32.)

Here, Plaintiff's own deposition testimony, discussed *supra* section B.1, demonstrates that she does not have individual standing as to the claims under § 1983 and state law. Indeed, while the Complaint alleges Plaintiff is "entitled to actual and punitive damages" specific to the state law claim for "Outrage/Intentional Infliction of Emotional Distress" (Dkt. No. 1-1 at 14–15), the evidence shows the conduct at issue was not directed at Plaintiff and did not occur in her presence. *See Upchurch v. New York Times Co.*, 431 S.E.2d 558, 561 (S.C. 1993) ("The law limits claims of intentional infliction of emotional distress to egregious conduct toward a plaintiff proximately caused by a defendant. . . . It is not enough that the conduct is intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.") (internal citations omitted); *Doe v. The Citadel*, 2017 WL 4786974, at *1 (S.C. Ct. App. July 12, 2017) ("In South Carolina, outrage claims are limited to a defendant's egregious conduct toward a plaintiff. . . . In the instant case, Mother did not present any evidence that The Citadel directed any tortious conduct specifically toward her. . . . Additionally, Mother cannot recover on any third-party outrage theory because no evidence shows The Citadel violently

attacked her son in her presence.") (internal citations omitted). For these reasons, the undersigned recommends Plaintiff does not have individual standing to bring this action.

Further, because Xavier is an adult, and the events at issue occurred when he was over 18, Plaintiff only has standing to bring a suit on Xavier's behalf as a "next friend." "[T]he availability of next friend standing as an avenue into federal court is strictly limited." *Hamdi v. Rumsfeld*, 294 F.3d 598, 603 (4th Cir. 2002). To serve as a "next friend" for Xavier, Plaintiff must provide an adequate explanation, such as mental incompetence or other disability, as to why Xavier cannot bring the action himself. *Id.* at 602–03. "The burden is on the 'next friend' clearly to establish the propriety of [her] status and thereby justify the jurisdiction of the court." *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990).

Here, Plaintiff has failed to show that Xavier is incompetent or suffers from another disability preventing him from prosecuting this action on his own behalf. Plaintiff testified that Xavier only first exhibited concerning behavior a week before the underlying incident. As discussed *supra* section B.2, Xavier's May 24, 2023 mental status exam indicates his mental health has improved since that time, and Plaintiff has not submitted Xavier's more recent medical records. Because the limited record evidence belies the Complaint's implication that Xavier is currently mentally disabled or otherwise incompetent, the undersigned recommends Plaintiff does not have standing as a "next friend." *See Runge v. Sanford*, 2009 WL 9083917, at *1 (D.S.C. Feb. 25, 2009) (holding that parents do not have standing to bring suit on behalf of their adult child absent a showing that the child is incompetent), *adopted by*, 2009 WL 2601468, at *2 (D.S.C. Aug. 21, 2009), *aff'd sub nom. Runge v. Barton*, 368 F. App'x 361 (4th Cir. 2010); *see also Doe 5 v. Shenandoah Valley Juv. Ctr. Comm'n*, No. 5:17-cv-00097, 2022 WL 4459879, at *3 (W.D. Va.

Sept. 26, 2022) (A next friend must, *inter alia*, "provide an adequate explanation why the real party in interest cannot appear on his own behalf to prosecute the action").

## <u>CONCLUSION</u>

Based on the foregoing, because Plaintiff lacks standing, it is RECOMMENDED that the Court GRANT the Motions for Summary Judgment (Dkt. Nos. 48; 49) and this action be dismissed without prejudice.[2]

IT IS SO RECOMMENDED.

March 26, 2026

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[2] *See Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 558 (4th Cir. 2024) (requiring dismissal without prejudice for lack of standing).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).